IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ZANE HOLDER,

    Plaintiff,

v.

ILLINOIS DEPARTMENT OF
CORRECTIONS and STATE OF ILLINOIS
DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES,

    Defendants.

No. 09-cv-1082-JPG

# MEMORANDUM AND ORDER

This matter comes before the Court on the parties' cross-motions for summary judgment (Docs. 41 and 42). Both parties filed responses (Docs. 43 & 44).

For the following reasons, the Court **DENIES** both parties' motions for summary judgment.

## SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). When the parties file cross-motions for summary judgment, the courts "review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." *Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 359 (7th Cir. 2011) (citing *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## BACKGROUND

### I. Holder's Absences From the Department

This case arises out of Plaintiff Zane Holder's ("Holder") use of Family and Medical Leave Act ("FMLA") leave. Holder has been employed by Defendant Illinois Department of Corrections ("the Department") as a correctional officer since October 6, 2003. During his employment, Holder's wife, Sarah Holder ("Sarah"), was diagnosed with "chronic mood disorder and substance abuse disorder" stemming from an opiate dependency. In order to care and provide emotional support for Sarah, Holder found it necessary to take leave from work.

Holder had the option to apply for leave under the FMLA or to request Family Responsibility Leave ("FRL"). Under FRL, the Department covers an employee's insurance premiums for up to six months. Holder elected to apply for FMLA leave. On September 21, 2007, Holder submitted to the Department an excuse form from Herrin Behavioral Health requesting Holder be excused from work on August 28, 2007, and September 2, 3, 4, 10, 13, and 14, 2007, "due to medical LOA to care for spouse who required daily care and supervision." (Doc. 41, Exh. 3). On October 3, 2007, Holder submitted a FMLA medical certification form to the Department. On the form, the healthcare provider indicated that Sarah was "currently incapacitated" due to a serious health condition and it would be necessary for Holder to take off work intermittently. On or about October 31, 2007, the Department provided written notification to Holder that it had approved his request for FMLA leave.

Ultimately, Holder was absent from work over 130 days to care for Sarah. The Department contends that Holder was absent due to Sarah's condition eleven days in September 2007 and eleven days in October 2007. Holder, however, contends he was only absent nine days

in September 2007 and seven days in October 2007 to care for Sarah.[1] Both parties agree that Holder was absent because of Sarah's condition for nine days in November, thirteen days in December 2007, seventeen days in January 2008, thirteen days in February 2008, nineteen days in March 2008, and eighteen days in April 2008. The parties dispute the number of Holder's absences in May and June 2008. However, neither party disputes that the Department continued to approve Holder's leave as FMLA-qualifying until April 18, 2008. On that day Lisa Cunningham, Shawnee Correctional Center's FMLA coordinator, notified Holder his FMLA leave had expired. Thereafter, Holder requested FRL.

In 2009, CMS informed Holder that the state had mistakenly paid for his health insurance premiums from January 1, 2008, through June 30, 2008, and that Holder was responsible to repay those health insurance premiums. Beginning May 2009, CMS garnished 25% of Holder's wages to collect those premium amounts. Thereafter, Holder filed the present suit.

## II. Holder's FMLA Complaint

Holder's complaint alleges the Department interfered with his rights under the FMLA as follows: (1) the Department denied Holder intermittent leave under the FMLA beginning on or about January 1, 2008; (2) the Department failed to provide notice that Holder's FMLA leave was

---

[1] The Court notes the various inconsistencies present from both parties with regard to the number of days Holder was absent to care for Sarah. For example, in Holder's complaint, he states he was absent ten days in October 2007 to care for Sarah, but in his motion for summary judgment he states he was absent only seven days to care for Sarah. Also, at one point, Holder contends he was absent for six days between September 30, 2007, and October 2, 2007, which is obviously impossible. Similarly, the Department reports that Holder was absent eleven days in September 2007 and eleven days in October 2007 to care for Sarah, while the Department's "Notification of Absence" forms, attached as exhibits, only account for seven days of absences in September and seven days of absences in October 2007. While the Department also attached a handwritten time sheet as an exhibit, the Court was not able to interpret the meaning of that time sheet.

exhausted; and (3) the Department required Holder to repay health insurance premiums beginning in January 2008.  In its motion for summary judgment and supporting memorandum (Docs. 41 & 41-1), the Department argues that Holder was not entitled to FMLA leave at all.  However, if Holder was entitled to FMLA leave, he never returned from that leave and the Department was not required to pay his health insurance premiums.   Further, the Department contends that Holder was given all the notice required under the FMLA.

Holder, however, argues he was entitled to FMLA leave because the Department approved his request for FMLA leave on October 31, 2007.  Holder further argues that he was entitled to FMLA leave after his 60th day of leave because the Department approved those additional days of FMLA leave and is now equitably estopped from denying FMLA leave on those days.  Finally, Holder argues that the Department violated the FMLA when the Department required him to repay health insurance benefits from when he was on FMLA.

## ANALYSIS

**I. FMLA Generally**

The FMLA entitles eligible employees to 12 workweeks of leave during a 12-month period to care for a spouse with a serious health condition.  29 U.S.C. § 2612(a)(1) (2006).  The FMLA further provides that "the employer shall maintain coverage under any 'group health plan' for the duration" of the employee's FMLA leave.  29 U.S.C. § 2614(c)(1).  Employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights.  29 U.S.C. § 2615(a)(1).  To establish an FMLA interference claim, the employee must show: (1) the employee was eligible for FMLA leave; (2) the employer was covered by the FMLA; (3) the employee was entitled to FMLA leave; (4) the employee provided required notice of intent to take leave; and (5) the employer denied the employee FMLA benefits to which employee was entitled.

*de la Rama v. Illinois Dept. of Human Services*, 541 F.3d 681, 686-87 (7th Cir. 2008).

Here, the parties agree Holder was eligible for FMLA leave, the Department and CMS are covered by the FMLA, and Holder gave adequate notice. However, the parties disagree as to whether Holder was entitled to FMLA leave and whether he was denied benefits to which he was entitled. Specifically, the Department and CMS argue that Sarah did not have a serious health condition, was not incapacitated, and did not receive treatment on the days Holder was absent. Holder argues that the Department and CMS are estopped from arguing he is not entitled to FMLA because they did not request further medical documentation and they did not originally deny him his benefits.

## II. The Department is Estopped from Claiming Holder was Not Entitled to FMLA Leave

First, Holder contends the Department and CMS are equitably estopped from asserting that he was not entitled to FMLA leave because Sarah did not suffer from a serious health condition.[2] The elements of equitable estoppel include (1) a definite misrepresentation; (2) reasonable reliance; and (3) detriment to the party who acted in reasonable reliance on the misrepresentation. *Heckler v. Community Health Servs., Inc.,* 467 U.S. 51, 59 (1984) (citing Restatement (Second) of Torts § 894(1) (1979)). The Eighth Circuit has explicitly held the principles of equitable estoppel applicable in the FMLA context in circumstances similar to the present case. *Murphy v. FedEx Nat. LTL, Inc.*, 618 F.3d 893, 899-900 (8th Cir. 2010); *see also Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 583 (7th Cir. 2000) (acknowledging *in dicta*

---

[2]The Court notes that the Department has not raised the issue of whether estoppel is appropriate against a governmental entity. *See Nagle v. Acton-Boxborough Regional School Dist.*, 576 F.3d 1, 3-4 (1st Cir. 2009) (finding equitable estoppel inapplicable in an FMLA leave case against defendant school district where principal misrepresented that plaintiff was eligible for FMLA leave) (citing *Heckler v. Cmty. Health Serv.,* 467 U.S. 51, 60 (1984)). Accordingly, that argument is waived.

5

that the doctrine of equitable estoppel might be applicable in regard to an employee's *eligibility* for FMLA leave); *Dobrowski v. Jay Dee Contractors, Inc.*, 571 F.3d 551, 554 (6th Cir. 2009); *Duty v. Norton Alcoa Proppants*, 293 F.3d 481, 493-94 (8th Cir. 2002); *Kosakow v. New Rochelle Radiology Assocs., P.C.*., 274 F.3d 706, 722-27 (2d Cir. 2001). In *Murphy*, the employer argued the district court erred in failing to find that the employee suffered from a serious health condition. *Id*. at 899. The court held "that an employer who makes an affirmative representation that an employee reasonably and detrimentally believed was a grant of FMLA leave can be estopped from later arguing that the employee was not in fact entitled to that leave because she did not suffer a serious health condition." *Id*. at 899-900.

Similarly, here, the Department represented to Holder that it had approved his FMLA leave based on the medical certification form. The Department's approval of Holder's request for FMLA leave is essentially an assertion by the Department that it was satisfied Sarah suffered from a serious health condition. Holder detrimentally relied on that representation by taking absences, believing the Department would cover his insurance premiums, and not pursuing FRL. Further, the Department could have requested more information concerning Sarah's condition if it did not believe the doctor's certification was sufficient[3]; the Department, however, failed to do so. Thus, it was also reasonable for Holder to rely on the Department's representation that it was satisfied Sarah suffered from a serious health condition. Accordingly, the Department is now estopped from asserting Holder was not entitled to FMLA leave.

---

[3]"In any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee or the spokesperson to ascertain whether leave is potentially FMLA-qualifying." 29 C.F.R. 825.301.

## III. The Department Cannot Recoup Insurance Premiums Under 29 U.S.C. § 2614(c)(2)

Next, the Department argues it was entitled to recoup its insurance premiums beginning in January 2008 because Holder failed to return from FMLA leave. The FMLA states that

> [t]he employer may recover the premium that the employer paid for maintaining coverage for the employee under such group health plan during any period of unpaid leave under section 2612 of this title if– (A) the employee fails to return from leave under section 2612 of this title after the period of leave to which the employee is entitled has expired; *and (B) the employee fails to return to work for a reason other than– (I) the continuation, recurrence, or onset of a serious health condition that entitles the employee to leave under subparagraph (C) or (D) of section 2612(a)(1) of this title or under 2612(a)(3) of this title . . . .*

29 U.S.C. § 2614(c)(2) (emphasis added). In its motion, the Department correctly observes that the FMLA provides that an employer may recover its insurance premiums from the employee if the employee fails to return from FMLA leave. However, the Department fails to refer to section B of the statute. Assuming Holder did in fact fail to return from leave, that failure was due to his continued care for Sarah as demonstrated by his repeatedly approved absences under both the FMLA and FRL. Accordingly, the Department cannot recover insurance premiums from Holder beginning in 2008 because he failed to return from leave.

## IV. Whether Holder is Entitled to FMLA Leave After His 60th Absence is a Genuine Issue of Material Fact

Holder next argues that he is entitled to FMLA leave after his 60th absence. First, Holder contends he is entitled to FMLA leave for the entire period of January 2008 through June 2008. In the alternative, Holder contends he is entitled to FMLA leave until April 18, 2008, the day on which the Department notified him he was no longer eligible for FMLA leave. In support of these contentions, Holder argues that the Department failed to provide him appropriate notice, and that the Department is estopped from denying him FMLA leave because the Department

continued to approve his leave beyond his 60th absence.

### a. The Department did not Violate the FMLA Notice Provisions

Holder first argues that the Department failed to provide him with notice as required by 29 C.F.R. 825.300 and 29 CFR 825.301. The relevant regulations require four types of notice: general notice, eligibility notice, rights and responsibilities notice, and designation notice. 29 C.F.R. § 825.300. Although not clearly stated in his complaint, Holder seems to argue that the Department failed to comply with either the eligibility notice or the designation notice portion of the statute and alleges that the Department failed to notify Holder "about the status of his leave beginning on or about January 1, 2008." Doc. 2, p. 7.

#### i. Eligibility Notice

The applicable eligibility notice regulation states as follows:

> When an employee requests FMLA leave . . . the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances. . . . Employee eligibility is determined and notice must be provided at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period. . . . All FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12-month period.

29 C.F.R. § 825.300(b)(1). The Department provided Holder with notice of his eligibility to take leave on or about October 31, 2007. Accordingly, the Department was under no further obligation to provide Holder with notice of his eligibility to take leave.

#### ii. Designation Notice

Next, the designation notice portion of the regulation provides that

> [o]nly one notice of designation is required for each FMLA-qualifying reason per applicable 12-month period, regardless of whether the leave taken due to the qualifying reason will be a continuous block of leave or intermittent or reduced schedule leave. If the employer determines that the leave will not be designated as FMLA-qualifying (e.g., if the leave is not for a reason covered by FMLA or the

8

> FMLA leave entitlement has been exhausted), the employer must notify the employee of that determination.

29 C.F.R. 825.300(d)(1). Further,

> [i]f it is not possible to provide the hours, days, or weeks that will be counted against the employee's FMLA leave entitlement (such as in the case of unforeseeable intermittent leave), then the employer must provide notice of the amount of leave counted against the employee's FMLA leave entitlement *upon the request by the employee* . . . .

29 C.F.R. 825.300(d)(6) (emphasis added).

Here, Holder does not contend that he requested notice of the amount of leave the Department had been counted against his FMLA leave entitlement. Therefore, the Department was under no obligation to provide Holder with any additional designation notice in January 2008. Accordingly, the Department did not violate either the eligibility or designation notice requirements.

### b. Whether the Department is Estopped from Denying Holder Leave After the 60th Day is a Genuine Issue of Material Fact

Next, Holder argues the Department is equitably estopped from denying him FMLA leave after 60 days because the Department continually approved those absences as FMLA leave. As discussed earlier, to prevail on his equitable estoppel claim, Holder must show: (1) a definite misrepresentation; (2) reasonable reliance; and (3) detriment to the party who acted in reasonable reliance on the misrepresentation. *Heckler v. Community Health Servs., Inc.,* 467 U.S. 51, 59 (1984) (citing Restatement (Second) of Torts § 894(1) (1979)).

Here, Holder requested FMLA leave on over 100 days and the Department continually approved this leave well beyond the 60 days to which he was entitled under the FMLA. Thus, the Department undoubtedly misrepresented Holder's entitlement to FMLA leave. Based on these misrepresentations Holder continued to request FMLA leave and he did not pursue FRL.

Accordingly, Holder detrimentally relied on the Department's misrepresentation that he was entitled to leave.

In order to prevail on his equitable estoppel claim, Holder must demonstrate that his reliance on the Department's misrepresentations was reasonable. Holder received a packet explaining FMLA benefits when he began employment, and he received a copy of his time sheet each month. Thus, Holder knew or should have known that FMLA covered a maximum of 60 days, and he knew or should have known that he had exceeded those sixty days. The Department, however, continually approved Holder's FMLA requests after 60 days, as evidenced by the numerous "Notification of Absence" forms approved by the warden. A jury could find it was reasonable for Holder to rely on the warden's representation that he was still entitled to FMLA leave, at least for a period of time where it was plausible he had not reached 60 days. However, at some point, as his FMLA leave exceeded 60 days more and more, a reasonable jury could find his reliance on the Department's approval became unreasonable. Accordingly, the reasonableness of Holder's reliance on the Department's misrepresentations and the length of time which Holder's reliance was reasonable are genuine issues of material fact.

## V. When was the 60th Day?

Having found Holder is entitled to FMLA leave until at least his 60th FMLA-qualifying absence, the next issue is to determine the date of Holder's 60th FMLA-qualifying absence. Holder contends his 60th absence fell on February 11, 2008. The Department and CMS contend that Holder's 60th absence fell on January 28, 2008. Both parties agree that his first absence occurred on August 28, 2007, and that Holder had one FMLA-qualifying absence in August 2007. The parties further agree to Holder's FMLA-qualifying absences as follows: nine absences in November, thirteen absences in December, and seventeen absences in January. The parties,

however, do not agree to the number of Holder's absences for the months of September and October 2007. Holder contends he was absent nine days in September and seven days in October. The Department and CMS contend Holder was absent eleven days in September and eleven days in October. Accordingly, the date of Holder's 60th FMLA-qualifying absence is a dispute as to a material fact which must be resolved at trial.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** both parties' motions for summary judgment. The remaining issues of fact in this case are (1) whether it was reasonable for Holder to rely on the Department's representations that he was entitled to FMLA leave after his 60th absence; (2) if it was reasonable for Holder to rely on the Department's misrepresentations, how many days after the 60th day was Holder's reliance reasonable; and (3) when was Holder's 60th day of FMLA leave. Because these are material issues of fact upon which the parties do not agree, these issues are left to a jury to decide.

**IT IS SO ORDERED.**

**Dated: July 25, 2011**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**